UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JEANNE RIZZOTTO**,

Debtor.

Case No. **09-60965-11**

*MEMORANDUM of DECISION*

At Butte in said District this 11th day of August, 2009.

In this Chapter 11 bankruptcy, after due notice, a hearing was held July 28, 2009, in Billings on the Motion to Modify Stay, or in the alternative, Motion for Adequate Protection filed by Bank of the West (the "Bank") on June 15, 2009. The Bank was represented at the hearing by James A. Patten of Billings, Montana. Debtor was represented at the hearing by Jon R. Binney of Missoula, Montana. The Court heard testimony from Henry Malkin and Anthony Shoupe and the Bank's Exhibit 1 was admitted into evidence without objection. At the conclusion of the hearing, the Court granted the parties additional time to file post-hearing briefs. The Bank filed its post-hearing brief on August 4, 2009, and Debtor filed her post-hearing brief on August 5, 2009. The matter is thus ready for decision.

This Court has original and exclusive jurisdiction of this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a). The pending matter is a core proceeding under 28 U.S.C. § 157. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law. For the reasons discussed below, the Court finds in favor of the Bank.

1

FACTS

The majority of the facts in this case are not in dispute. The Debtor filed a voluntary Chapter 11 bankruptcy petition on May 27, 2009. The Bank is the holder of a secured claim against the Debtor and the present balance owed by Debtor to the Bank, excluding any pre-computed interest or other unearned charges, is $166,094.29 as of May 27, 2009. The Bank holds a security interest or lien upon Debtor's 2005 Tsunami motor home, VIN: 4UZABFCY55CU35732. The Bank's perfected security interest stems from a retail installment dated April 8, 2008, and an Arizona Certificate of Title. The 2005 Tsunami motor home is presently located in Carbon County, Montana. The last payment made by Debtor to the Bank was in December of 2008. Debtor failed to make the payments due on January 8, 2009, February 8, 2009, March 8, 2009, April 8, 2009, and June 8, 2009.

The Bank's witness, Henry Malkin ("Malkin"), testified that Debtor's 2005 Tsunami motor home has a value of approximately $100,000. Malkin has been employed by the Bank for the past 7 years as a remarketing officer. Malkin, in his capacity as the Bank's remarketing officer, provides the Bank with an evaluation of recreational vehicles, boats and automobiles prior to offering the Bank's collateral for sale at auction.

Malkin explained that repossessed collateral comes into the Bank's remarketing department. When the collateral is indicated as being available for sale, Malkin obtains a detailed report from the auction house, which report identifies such things as the model of the collateral, mileage, and condition. The auction house also provides Malkin with an approximation of value. Malkin then consults the NADA Guide to ascertain an independent value of the collateral. Malkin and the remarketing department then decide whether to offer the item of collateral for sale at auction.

Malkin is responsible for selling roughly 400 units of collateral per month, which number includes about 100 motor coaches.

Once the decision is made to sell an item of repossessed collateral at auction, Malkin generally goes to the auction house and does a personal inspection of the collateral and compares his inspection to the inspection report prepared by the auction house. Malkin then forms an independent opinion as to the value of the Bank's collateral. The item of property then goes to bid and Malkin generally has final approval of any sale. If Malkin feels that a price is not adequate in relation to his independent opinion of value, and using similar collateral as a point of reference, Malkin will elect a "no sale."

Malkin testified that the Bank does not hire brokers or sell items on consignment because an auction provides transparency. In addition, Malkin testified that the cost of selling an item at auction is generally substantially less than the costs charged by a broker. Malkin stated that in his opinion, an auction brings a better price in the end.

Although Malkin did not personally inspect Debtor's motor home, Malkin hired Property Damage Appraisers to inspect Debtor's motor home and provide the Bank with a detailed inspection report. Exhibit 1. After considering numerous factors, such as the condition report prepared by Property Damage Appraisers and the NADA Recreation Vehicle Appraisal Guide, Malkin originally concluded that Debtor's motor home "would bring somewhere in the $80,000 range at auction." However, just prior to the hearing, Malkin learned that Debtor's motor home had approximately 52,000 miles rather than 159,000 miles, and thus adjusted his valuation of Debtor's motor home upward to $100,000. Malkin also explained that the Bank sells its motor homes for wholesale, as opposed to retail (which often includes dealer profit and reconditioning). Moreover, in the current

3

economic environment, Malkin testified that the Bank is getting about 90% of the NADA wholesale price for motor coaches.

Debtor's witness, Anthony Shoupe ("Shoupe"), countered Malkin's testimony by asserting that Debtor's 2005 Tsunami motor home is worth $150,000. Shoupe previously sold recreational vehicles for an RV dealer, Bretz RV & Marine, in Missoula but is presently employed at a used car dealership, Eide Motors. Shoupe, like Malkin, consulted the NADA Guide and used his knowledge of what motor coaches were worth in 2005 and what they sold for at that time, together with Property Damage Appraisers' condition report of Debtor's motor home, and concluded that Debtor's motor home had a retail value of $186,610 based upon the May 2009 NADA Guide. Based upon such valuation, Shoupe testified that if Debtor had a year to sell her motor home, she might get $186,000, but there was just as good a chance "to sell it for nothing as opposed to everything." When pressed to narrow his valuation estimate, Shoupe guessed that Debtor's motor home was worth $150,000. Both Shoupe and Malkin agree that motor homes, such as Debtor's, depreciate at the rate of roughly 10 percent per year.

The Bank filed its Motions on June 15, 2009, seeking relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2). Debtor filed a two-page opposition to the Bank's Motion on June 25, 2009, and July 15, 2009, asserting that the value of the 2005 Tsunami motor home was in excess of $200,000 and that "there is adequate protection in the form of an equity cushion." On July 27, 2009, Debtor filed an "Offer of Adequate Protection", offering to pay $666.67 per month in the form of adequate protection. The Bank rejects Debtor's offer of adequate protection on the basis that, in the event the Court denies the motion to modify stay, the Bank is entitled to monthly adequate protection payments of $1,217.93.

APPLICABLE LAW

The commencement of a case under the Bankruptcy Code generally stays any and all proceedings against debtors. 11 U.S.C. § 362(a); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). The importance of the automatic stay is discussed in the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97.

The fundamental debtor protections afforded by § 362(a), however, are not absolute. 11 U.S.C. 362(d). As explained in § 362(d):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

Except for the issue of a debtor's equity in property, in a proceeding on a motion to modify the automatic stay, the debtor has the burden of proof to show that the stay should not be modified or

5

annulled. *In re National Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D.Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D.Ill. 1999); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr. N.D.Ill. 1991); 11 U.S.C. § 362(g).

As noted above, § 362(d)(1) allows a court to grant relief from the automatic stay for cause, "including the lack of adequate protection." What constitutes adequate protection for purposes of § 362(d)(1) is not defined in the Bankruptcy Code. However, "11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."
>
> [*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]
>
> On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:
>
> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate

6

> protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

*See also In re Farmer,* 257 B.R. 556 (Bankr. D. Mont. 2000) (discussing adequate protection and the calculation thereof).

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. *See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.) The *Mellor* Court defined the term "equity cushion" as "the value in the property, above the amount owed to

the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400 n.2.

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

## DISCUSSION

When first considering the matter at hand, the Court thought the issue would come down to whether the Court valued the 2005 Tsunami motor home at wholesale value or retail value. However, after further consideration, the Court concludes that it need not address the wholesale versus retail value issue. The parties agree that Debtor owes the Bank $166,094.29 and Debtor's witness testified that the value of Debtor's motor home is $150,000. Using either Debtor's valuation of $150,000 or the Bank's valuation of $100,000, it is clear that the Bank is undersecured. Debtor's and the Bank's witnesses agreed that Debtor's motor home is depreciating at the rate of 10 percent per year, even when sitting idle. For purposes of discussion, if Debtor's motor home is indeed worth $150,000, it is depreciating at the rate of $15,000 per year, or $1,250 per month. Given such rate of depreciation, the Court finds that Debtor's offered adequate protection payment of $666.67 per month will not protect the Bank's interest. Debtor has also failed her burden of proof to show that the stay should not be modified or annulled.

Given Debtor's admitted lack of equity cushion in the motor home, the Court finds that the

Bank is not adequately protected and that it is entitled to relief from the automatic stay under both 11 U.S.C. § 362(d)(1). Moreover, Debtor makes the comment in her post-hearing brief that "Debtor's Chapter 11 Reorganization includes development of an RV park [Docket #1]. The RV is a necessary to an effective reorganization so that motion to lift stay should be denied." Despite the foregoing, Debtor failed to allege that the motor home was necessary for her reorganization in either her written opposition to the Bank's Motion or at the hearing. Debtor's naked assertion in a post-hearing brief that her development of an RV park might somehow be thwarted if she loses her motor home simply is not supported by the record. Accordingly, the Court also finds that the Bank is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

For the reasons discussed herein, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Motion to Modify Stay filed by Bank of the West on June 15, 2009, is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit the Bank of the West to pursue its nonbankruptcy remedies against the following property of the estate:

    2005 Tsunami motor home, VIN: 4UZABFCY55CU35732.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana