Doug James (#2237)
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone (406) 248-7731
Fax (406) 248-7889
Doug.James@MoultonBellingham.com

Attorneys for James M. Casey

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

IN RE:

JEANNE RIZZOTTO,

Debtor.

Cause No. 09-60965
(Chapter 11)

**OBJECTION TO AMENDED DISCLOSURE STATEMENT**

**NOTICE OF HEARING**

Date: **January 12, 2010**
Time: **9 o'clock a.m.**
Location: **5th Floor Courtroom,
James F. Battin Courthouse
316 North 26th Street, Billings, MT 59101**

James M. "Mike" Casey respectfully objects to the Debtor's Amended Disclosure Statement. The Amended Disclosure Statement does not provide adequate information as defined by 11 USC Section 1125(a)(1). The Amended Disclosure Statement fails to provide a hypothetical investor with sufficient information to make an informed judgment about the proposed plan of reorganization. The Disclosure Statements deficiencies remain numerous and include but are not necessarily limited to the following:

1. **Valuation Issues**. Debtor provides statements of value for the various pieces of real property that she owns. However, the date and method of valuation was not disclosed. The value of recreational properties in Montana has declined substantially over

the last two years. The Disclosure Statement does not explain how the values were derived. If the properties were formally appraised, critical information regarding those appraisals was not provided. If the properties have not been formally appraised, that fact should be disclosed. Additionally, the acquisition price of the properties has not been disclosed. The Disclosure Statement suggests that the Debtor owns millions of dollars of worth of real property. The actually value of those properties in the current economy, however, may be substantially less. The Yellowstone Club was once appraised as having a value of hundreds of millions of dollars. When the resort was sold, the price realized was only a fraction of the value set forth in most of the appraisals. Without more information, it is impossible for creditor's to evaluate Debtor's stated values. The Disclosure Statement should include Debtor's cost of the property (Debtor's basis in the property) plus current appraised value. The date of the valuation is critical.

2. **The Value of a 99 Year Lease**. The Amended Disclosure Statement provides absolutely no information on what the value is of a 99 year lease of an RV Pad on a golf course that is yet to be permitted or built.

3. **Securities**. The Debtor's proposed "sale" of 99 years leases may constitute the sale of an "investment contract" which is a security under Montana law, subject to regulation by the State Auditor and Securities Commissioner. See 330-10-103(22), MCA. The Amended Disclosure Statement references an earlier securities offering that was made by the Debtor in connection with her golf course development. However, the Amended Disclosure Statement provides virtually no information on how the Debtor is going to comply with state and federal securities laws in connection with her current plan. If the sale of 99 year leases is a security, then the Amended Disclosure Statement should set forth how and when the Debtor is going to comply with state and federal securities laws. Additionally, the Amended Disclosure Statement should include an explanation of the costs and expenses

that the Debtor will incur in connection with a securities offering, as well as the time frame. If the Debtor contends that a security is not involved, then she should offer an opinion of counsel to the effect that the sale of 99 year leases does not involved investment contract and is not subject to regulation by the Montana State Auditor and Securities Department or Securities and Exchange Commission. Compliance with securities regulations may had a significant impact on the Debtor's plan. If a security is involved, her proposal would violate substantive Montana law and could even involved criminal conduct.

4. **Regulation D Securities Offering.** the Amended Disclosure Statement recites that Debtor raised money for her development through a Regulation D Securities Offering. Debtor has disclosed that she raised $415,000 through that securities offering. Debtor claims that all of the money that she raised through her first securities offering has been spent. However, she provides little detail or information on how those funds were used. Debtor provides no information on the earlier securities offering and what interests the investors have in her development. Debtor discloses that her initial investors are now asserting claims of 1.5 million dollars against her, but provides almost not information regarding the substance and nature of those claims. If the individuals who initially invested in Debtor's Resort are making allegations of fraud, constructive fraud, securities fraud, or breach of contract, those facts are clearly material and must be disclosed, in detail, in the Amended Disclosure Statement. It is important to note that these investors are asserting not just claims against the Debtor but claims that arise out of the very development that is the subject of her plan of reorganization. Presumably these claimants will be paid under Debtor's Plan as unsecured creditors. Yet, Debtor is disputing those claims. The Disclosure Statement provides no information regarding the nature of the dispute or what it is going to cost the bankruptcy estate to litigate those claims.

5. **Feasability**. Debtor's plan of reorganization is not feasible and the Amended

Disclosure Statement fails to provide adequate information and detail sufficient for the Court and/or creditors to make any determination as to the feasability of Debtor's proposed business venture. The Amended Disclosure Statement omits significant amounts of material information that is necessary in order for a creditor to make an informed decision regarding feasability. The omitted information includes:

- When will the Debtor be able to start selling 99 year leases? The Debtor has failed to set forth any specific date when she will be in a position to start bringing in any income. Debtor fails to disclose that she has been working on this project for years and thus far has failed to clear the regulatory hurdles necessary in order for her to sell her 99 years leases.
- When will construction begin on the golf course? Debtor proposes a golf course a cost in access of 19 million dollars. Debtor intends to actively seek investors for her development, but she fails to disclose when construction will start, if it ever will.
- When will the golf course be completed?
- When will the purchasers/investors be able to start using their RV Pads in the Debtor's development?
- Will Debtor's development be phased or will it all be constructed at the same time? Debtor provides no description of the various phases, the amount of capital needed for each phase, and fails to provide any construction schedule.
- How much money must the Debtor raise before she can begin construction?
- How many 99 year leases must the Debtor sell before she can begin construction of the golf course?

- How Many 99 year leases must the Debtor Sell in order to be able to make the payments due under her plan over the next five years?
- Debtor fails to disclose when she will submit an application to Carbon County, Montana, in order to obtain subdivision review and approval.
- The Disclosure Statement provides no information on Debtor's proposed securities offering ( the sale of an investment contract) and how or when Debtor is going to comply with the Securities Act of Montana and applicable federal regulations.
- The Disclosure Statement provides no information regarding the cost of obtaining necessary water rights and environmental approvals for water and sewer facilities for her proposed up-scale development.
- Based upon her previous representations, Debtor has sought financing for her development from multiple sources. The Amended Disclosure Statement fails to note the number of applications submitted by the Debtor and the simple fact that she has been repeatedly turned down for financing. Debtor is attempting to finance the development of her resort through the sale of 99 year leases because she is not able to qualify for any conventional financing.
- The Amended Disclosure Statement provides no information on key employees and their salaries and benefits. Presumably as Debtor's resort is developed, it is going to need to employ individuals other than the Debtor. Those positions have not been identified nor has there been any disclosure of the their job duties, salaries or benefits. The absences of this material disclosure makes it appear that the Debtor is going to not only build the resort by herself but is going to operate and run it by herself. Besides the

development costs, Debtor is undoubtably going to incur additional costs and expenses to oversee the management and maintenance of the golf course and the RV park.

6. **Water Rights**. The Amended Disclosure Statement fails to provide adequate disclosure with respect to the water rights that Debtor must own in order to complete her development. Has the Debtor been able to acquire adequate water rights for a 9 hole golf course plus all of the RV Pads that will be built along the golf course, plus the club house? if the Debtor has acquired those water rights, they have a value, which should be disclosed and should be included in the Debtor liquidation analysis. If the Debtor does not have all of the necessary water rights, the Amended Disclosure Statement should set forth a time line for the Debtor to obtain those water rights and should explain how they are going to be obtained and what the costs of those water rights will be. If the Debtor must obtain additional water rights, there will a cost associated with that process (legal fees, etc.) as well as purchase costs.

7. **Environmental Issues**. The Amended Disclosure Statement is inadequate in that it fails to provide material information regarding environmental regulations. Does the Debtor have all of the necessary permits for a sewage treatment facility or to allow each purchaser to have a septic system. Debtor is proposing a high end residential golf course community, but fails to provide detail regarding environmental compliance and the treatment of rough sewage.

8. **The Effect of the Recession**. The Amended Disclosure Statement fails to address the impact that the current economic recession may have on Debtor's proposed development. The sale of residential properties is almost nonexistent in other resort communities in Montana such as Yellowstone Club, Moonlight Basin, etc. While the Debtor has high hopes of selling many 99 year leases, the Disclosure Statement simply provides

no hard data to back up or support the Debtor's optimism. Debtor has failed to explain or even make an argument as to why her RV lots will sell when luxury condominiums and homes at the Yellowstone Club and at Moonlight Basin are selling at or below cost. Debtor's proposed development has not, to date, sold any of the 99 year leases proposed and Debtor has no sales history.

9. **Subdivision Review and Approval.** The Amended Disclosure Statement is deficient in that it fails to provide sufficient information and detail regarding Debtor's obligation to comply with Montana's subdivision laws. A "lease" constitutes a subdivision under the Montana Subdivision and Plating Act, Section 76-3-101, et. seq. The Amended Disclosure Statement is deficient in that it fails to provide any information regarding the cost and expense of Debtor's compliance with the Subdivision Plating Act. The Disclosure Statement is also deficient in that it fails to disclose how Debtor's proposed development will be impacted if it is unable to obtain subdivision approval.

10. **Avoidable Transfers**. The Disclosure Statement fails to identify creditors who received preferential payments from the Debtor pre-petition. The Debtor's failure to disclose Debtor's intentions with respect to recovering those avoidable transfers.

11. **Misleading Disclosure**. The material omissions from Debtor's Amended Disclosure Statement are so numerous and so significant that they render the Disclosure Statement misleading. At best, Debtor's Disclosure Statement presents an overly optimistic plan to create a 19 million dollar RV park and golf course as a destination-resort community. At its worst, however, Debtor's Disclosure Statement presents a Plan that violates securities and subdivision laws and may mislead creditors and investors. A Court approved Disclosure Statement may ultimately be nothing more than a marketing device that the Debtor can use to lure uninformed investors into purchasing 99 year leases in a resort community that does not exist and will never exist.

12. **Contemp of Court.** Debtor is in Contempt of Court. In a State Court action, the Court entered an order finding Jeannie Rizzotto in Contempt of Court. Debtor remains in contempt and has failed to take any action to comply with the State District Court's Order. The District Court's contempt citation is material and should be disclosed in the Amended Disclosure Statement. The contempt citation demonstrates the Debtor's failure and refusal to comply with lawful Court orders. See Exhibit "A" hereto.

DATED this 7th day of January, 2010.

MOULTON BELLINGHAM PC

By /s/ *Doug James*
DOUG JAMES
Attorneys for James M. Casey

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of January, 2010, a copy of the foregoing was served upon the following by depositing a true and correct copy thereof in the United State mail, postage prepaid, addressed to:

Jon R. Binney, Esq.
BINNEY LAW FIRM, P.C.
P.O. Box 2253
Missoula, MT 59806-2253

By /s/ *Doug James*
DOUG JAMES
Attorneys for James M. Casey

DOUG JAMES
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, MT 59103-2559
Telephone (406) 248-7731

Attorneys for Defendant James M. Casey

MONTANA TWENTY-SECOND JUDICIAL DISTRICT COURT, CARBON COUNTY

| | |
|---|---|
| JEANNE RIZZOTTO, | Cause No. DV-08-96 |
| Plaintiff, | **ORDER** |
| -vs- | |
| JAMES M. CASEY and CONNIE CASEY, | |
| Defendants. | |

The Court held a Hearing on March 20, 2009. Plaintiff Jeanne Rizzotto was present at the Hearing and was represented by her attorney Robert Stephens, Jr. Defendant James Casey was represented by Doug James of Moulton Bellingham PC and Defendant Connie Casey was represented by attorney Stephen C. Mackey of Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P. Jeanne Rizzotto testified during the March 20th Hearing. No other witnesses were called.

Based upon the record before the Court, the testimony of Jeanne Rizzotto and the exhibits offered into evidence, the Court makes the following findings:

1.  Plaintiff Jeanne Rizzotto commenced this Interpleader action in June, 2008. Contemporaneously with filing this action, Rizzotto filed a Motion to Interplead and Deposit One Hundred Fifty-Five Thousand Dollars ($155,000.00) with the Court pursuant to Rule 22 of the Montana Rules of Civil Procedure. In her Complaint, Plaintiff Rizzotto stated that "Ms. Rizzotto is prepared to deposit the One Hundred Fifty-Five Thousand

dollars with the Court." Complaint Section 13. On June 18, 2008, the Court issued its Order Granting Plaintiff Rizzotto's Motion to Deposit Interpleader funds with the Court.

2. Jeanne Rizzotto failed to Deposit the One Hundred Fifty-Five Thousand dollars with the Court after entry of the Court's June 18, 2008, Order Granting her Motion.

3. By Motion dated August 19, 2008, Defendant Connie Casey moved the Court pursuant to Section 25-8-012, MCA for an Order holding Jeanne Rizzotto in Contempt of Court for disobedience of the Court's June 18, 2008, Order. The foregoing Order required Plaintiff Rizzotto to deposit the One Hundred Fifty-Five Thousand dollars with the Court in an interest baring account.

4. On August 27, 2008, the Court issued an Order to Show Cause to Plaintiff Rizzotto to appear before the Court at 9:30 o'clock am on Thursday, September 11, 2008, to Show Cause why she should not be held in contempt of Court and other remedies entered against her as a requested.

5. Plaintiff Rizzotto filed a Response to the Contempt Motion dated August 29, 2008.

6. The Court held a Hearing on the application of Connie Casey for an Order holding Plaintiff Jeanne Rizzotto in contempt. Pursuant thereto, the Court entered an Order dated September 19, 2008, wherein the Court Ordered, "That Plaintiff Jeanne Rizzotto shall deposit the registry of this Court with the Carbon County Clerk of District Court the sum of $155,000.00 USD on or before 5 o'clock pm, Wednesday, September 17, 2008. Failure of the Plaintiff to comply with this Order shall subject her to additional and/or renewal of the Motion to be held in contempt of Court and for other remedies as may be appropriate."

7. Jeanne Rizzotto failed to deposit the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court on or before 5 o'clock pm on Wednesday, September 17, 2008.

MOULTON BELLINGHAM PC

8. On or about December 8, 2008, Plaintiff entered into Stipulation with Defendants that Afforded Plaintiff Rizzotto additional time, up to January 6, 2009, to deposit the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court.

9. Plaintiff Jeanne Rizzotto failed to deposit the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court on or before January 6, 2009.

10. Defendant Connie Casey filed a Motion to Renew her Motion for Contempt requesting a Hearing by Motion dated January 30, 2009.

11. The Court issued an Order to Show Cause to Plaintiff Jeanne Rizzotto on February 2, 2009. The Hearing was scheduled for Friday February 20, 2009, at 2 o'clock pm.

12. Plaintiff Rizzotto filed a Motion to Vacate the Show Cause Hearing.

13. The Court held a Hearing on February 20, 2009, on the Motion of Connie Casey for an Order holding Plaintiff Jeanne Rizzotto in contempt for failure to comply with the previous Court Orders requiring her to Interplead the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court. Plaintiff Jeanne Rizzotto did not appear personally but was represented by counsel Robert L. Stevens, Jr. At the conclusion of the foregoing Hearing, the Court Ordered that Plaintiff Jeanne Rizzotto was found in Contempt of Court for her failure to comply with the previous Orders of the Court as a result her failure to deposit the sum of One Hundred Fifty-Five Thousand Dollars into an interest bearing account with the Carbon County Clerk of District Court. The Court Ordered that Plaintiff could purge herself of this Contempt by depositing the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court by noon on March 4, 2009. The Court also scheduled a subsequent Hearing for March 12, 2009.

14. Plaintiff Jeanne Rizzotto failed to purge herself of Contempt by failing to

1  deposit the One Hundred Fifty-Five Thousand Dollars with the Clerk of District Court by
2  noon on March 4, 2009.
3      15.    On March 5, 2009, Plaintiff moved the Court to Continue the March 12, 2009,
4  Show Cause Hearing. Plaintiff Rizzotto's Motion was granted and the Hearing was
5  rescheduled for March 20, 2009, at 10:30 o'clock am.
6      16.    Jeanne Rizzotto testified at the March 20, 2009, Hearing. Rizzotto offered
7  Exhibits 1 - 4 into evidence, in support of her assertion of her good faith efforts and inability
8  to fund the interpleader. The exhibits were admitted into evidence without objection.
9      17.    As of March 20, 2009, Plaintiff Jeanne Rizzotto had failed to pay the
10 One Hundred Fifty-Five Thousand Dollars into an interest baring account with the Clerk of
11 District Court of Carbon County, Montana. As such, the Court finds that Jeanne Rizzotto
12 is in contempt of court and remains in violation of the Court's previous Orders and remains
13 in Contempt.
14     18.    As a sanction for her contempt and for disobedience of this Court's Orders,
15 and in the interest of Justice the Court further Orders:
16         a.    That Plaintiff Jeanne Rizzotto shall pay the sum of One Hundred Fifty-
17             Five Thousand dollars ($155,000.00) into an interest baring account
18             with the Clerk of District Court in Carbon County, Montana. ***Plaintiff***
19             ***shall remain in contempt of Court until Plaintiff has paid all sums***
20             ***into the Clerk of Court as provided herein.***
21         b.    In addition to paying the One Hundred Fifty-Five Thousand dollars into
22             the Clerk of District Court, Plaintiff Jeanne Rizzotto shall also pay into
23             the Court an additional sum which shall represent the interest accrual
24             on One Hundred Fifty-Five Thousand dollars at the legal rate of ten
25             percent (10%) per annum, for the time period of June 18, 2008 through

with the full and complete legal description of the 198 acres in Carbon County, Montana including the name and address of the entity that owns the real property. In order to secure repayment of her obligations to the Caseys (the One Hundred Fifty-Five Thousand dollars plus interest, plus attorneys fees) Jeanne Rizzotto shall execute and deliver to the Caseys' attorneys a real estate mortgage giving a Junior lien on the one hundred ninety-eight (198) acres in Carbon County, Montana. The mortgage shall be executed by all appropriate persons and entities in order to be capable of being recorded in Carbon County, Montana. Plaintiff Rizzotto shall execute and then shall deliver the fully executed and notarized original mortgage back to counsel for the Defendants within ten (10) days of when the mortgage is delivered to Rizzotto and/or her counsel. The Caseys are hereby authorized and directed to record the foregoing mortgage in Carbon County, Montana.

21. On or before April 20, 2009, Plaintiff Rozzotto shall file with the Court and shall provide to the Caseys' attorneys, a complete list of all of Plaintiff's assets (real property and personal property). Plaintiff Rizzotto schedule of assets shall include Rizzotto's best estimate of the far market value of each asset. Rizzotto shall market, sell, and liquidate assets to the extent necessary to satisfy her obligations pursuant to this Order.

22. James Casey and Connie Casey are hereby authorized and directed to record a copy of this Order in the real estate records of Carbon County, Montana.

23. The Court shall retain Jurisdiction of this matter and shall enter such additional Orders as may be necessary or advisable.

DATED this 9th day of April, 2009.

GREGORY R. TODD
Judge Gregory R. Todd
The Honorable Gregory R. Todd

6

cc: Jon Binney
Robert L. Stephens, Jr.
Stephen C. Mackey, Esq.
Doug James

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was duly served by mail upon the parties or their attorneys of record at their last known address this 10th day of April 2009

By _____
Judicial Asst. To Honorable Gregory R. Todd